First District Appellate Court, Second Division, calling the case of the People versus DeAndre Minkins, 17-2808. You're in front of Justice Terry Lavin, along with my colleagues, Justice Puczynski and Justice Cobbs. Can counsel please identify yourselves, please? My name is Sharifah Rahmani from the Austin State Appellate Center, and I represent the appellant, DeAndre Minkins. Thank you. And Assistant State Attorney Douglas Harbath on behalf of the People. Okay, the format that we're going to use is that we will give you 10 minutes or so uninterrupted to present your arguments. And then after that, we will start with some questions. And typically, it's 15 minutes aside. If we unduly badger you with questions, maybe we'll give you a little bit more time, but we'll probably stick pretty close to that. Let's hear first from counsel for the defendant. Good morning, your honors, counsel. May it please the court. We're here today because DeAndre's cell site location information was illegally obtained by the police without a warrant. And defense counsel failed to file a motion to suppress the CSLI. This resulted in highly prejudicial evidence being presented to the jury, which placed him near the forest reserve where Rosemary's body was found. This evidence was critical to the state's case. The state heavily relied on the CSLI at trial to establish DeAndre's location at various times before, after, and at the time of the charged offense. After the CSLI, there's a reasonable probability that the outcome of trial would have been different. In 2018, the US Supreme Court held in Carpenter that the acquisition of CSLI is a search requiring a warrant. However, prior to Carpenter, the legal principles in support of the suppression motion already existed. The Seventh Circuit in Daniels, which was issued eight months prior to DeAndre's trial, found that the defendants in that case knew all they needed to know to make the Fourth Amendment argument seeking suppression of the CSLI obtained without a warrant. And surely the same is true here. Warrantless searches are, per se, unreasonable. A search occurs when the police invade the matter where there is a reasonable expectation of privacy. 19 years ago, Justice Leo recognized in Kyle v. The United States that new technology can change the expectations ascribed to a reasonable person. The United States Supreme Court has since recognized that an individual's, or recognized an individual's privacy interest in the comprehensive account of movement. In Jones, the Supreme Court held that GPS tracking of location requires a warrant. Justice Leo again noted that a reasonable expectation of privacy can change with new technology. And five justices and two concurring opinions acknowledged that individuals can have a reasonable expectation of privacy in the sum of their public movements. CSLI is akin to GPS tracking in Jones, but it's even more intrusive because cell phones accompany their users everywhere. In fact, in Riley, which came down almost two years before DeAndre's trial, the Supreme Court found that the search of a cell phone incident to arrest requires a warrant. The court noted that cell phones are such a pervasive and insistent part of daily life that a proverbial visitor from Mars might conclude that it's an important feature of human anatomy. The court explained that cell phones hold, for many Americans, the privacies of life. The court specifically cited historical location information as among the heightened privacy concerns present in government inspection of cell phones. And this is because the information details the user's specific movements. Defense counsel Heer had all he needed to file a motion to suppress the CSLI, which would have been meritorious. As this court noted in Strickland, there was no Illinois case or Seventh Circuit case addressing or resolving the issue of the illegality of the warrantless acquisition of CSLI. So it's clear that there was no binding authority against the filing of a suppression motion. And in fact, Strickland is an example that the defense bar was actively seeking suppression of the warrantless acquisition of CSLI. And reasonable counsel Heer would have done the same. This is a very serious case and it was incumbent upon counsel to move to suppress the CSLI. Any attorney would have known that that evidence was a crucial part of the state's case and would have sought to exclude it. Counsel's failure to do so was objectively unreasonable. The state used the CSLI to tie its whole case together. The state heavily relied on it during closing argument. Bronski's testimony put DeAndre near the forest preserve where Rosemary's body was found. But the information was used not only to establish location, but time frame. During closing argument, the state showed every one of Bronski's PowerPoint slides to the jury and specifically showed two, twice. The one from up north planning what would happen that night. And the one from 1115 to 1117 to argue that after leaving Applebee's, DeAndre was in the area of the forest preserve. And quote, he's in the area where Rosemary's body was found the next day. He left her body there, unquote. Significantly, this bolstered Carl Hicks' testimony, the jailhouse informant, as he was the only witness to testify that DeAndre and Shantae allegedly planned this and that DeAndre was at a forest preserve. But as this court knows, informants already have questionable credibility. In here, we have a repeat informant who had previously recanted his testimony in another murder case. And in his letter recanting that testimony, he told the state's attorney's office that he made it up and that it was not true. In the state's brief, they place a lot of emphasis on Hicks' testimony regarding DeAndre's purported confession. But the strength of Hicks' testimony is refuted. Indeed, during rebuttal argument, the state specifically stated that the jury could disregard Hicks' testimony and that it was not the linchpin of the state's case. Well, what was then? The legally obtained CSLI. CSI also created a story that did not necessarily depend on the informant. It was used to establish the times and locations for the series case. And without that evidence, there's a reasonable probability that the outcome of the trial would have been different. The medical examiner could not determine when Rosemary died. And while there was DNA evidence presented, there was no actual match of the DNA to Rosemary. She simply could not be excluded. And there are surveillance videos from the parking lot of Chante's, the gas station, and the car wash. And Hicks testified that DeAndre went to Chante's that night. But Hicks wrote the state's attorney in this case after the surveillance videos had already been obtained. And the records otherwise avoid any evidence suggesting that DeAndre would have been up north, except for the CSLI. Because it showed that earlier in the day, around six o'clock, he was up north, you know, and then he moved to the highway near the Bishop Ford, used a tower there, and then came to the south suburb, and then ended up going back, you know, on the Bishop Ford, but then that was using the tower in the opposite direction. Based on this record, we don't know if the surveillance videos were recovered as a result of the warrantless acquisition of DeAndre's CLI. But regardless, the CSLI was an absolutely crucial piece of evidence in the state's case. Defense counsel's failure to move to suppress it was not only objectively unreasonable, but was prejudicial. And we'd ask this court to reverse and remand for a new trial. Okay, any questions for my colleagues? Okay, hearing none, I'll ask a few. Isn't it true that there's well-settled case law that it's your burden to show that counsel's conduct was objectively unreasonable, given the state of the law at the time the suppression motion would have been filed? Yes. Okay, and how then, given the fact that Carpenter was decided so much later, why shouldn't we do what the Georgia Supreme Court did and indicated where they indicated that trial counsel could not be deemed ineffective for failing to argue precedent that was not in existence at the time of his trial? Well, all the pieces of information, all the law that counsel needed was available. I mean, it's clear that the Supreme Court's precedent that as technology advanced, that the court has continuously recognized and increased and heightened privacy interest as technology advances. And so counsel didn't have to to be able to file the suppression, to file a suppression motion, and that it would be meritorious. Because also, I believe the case that you're referring to out of Georgia, that came out after Jones, or before, or that was before Jones and Riley, when the defendant's trial had occurred. Here, DeAndre's trial was after Jones and Riley, where the court had already acknowledged that. Yeah, but Jones is a little bit different though, because in that case, they were actively following the defendant on his cell phone. And here, they were looking at information on the cell phone that was obtained through a good search warrant. Isn't that correct? They got the phones through a search warrant. The phones, the phones were actually obtained through a search warrant. The CSLI was not. The CSLI was obtained prior to the search warrant. And here, the, you know, the ability of GPS is a tracked vehicle. The CSLI, using CSLI, is to be able to plot every second of where this person is going, where they're at. And so what we have here is, you know, significantly more intrusive than what was there. I don't know how you could say that, given the fact that they were, they had attached a GPS tracking device to the vehicle in Jones. And that's completely different from the circumstances here, it seems to me. Well, in that case, they had decided on trespass grounds, saying that, you know, you attach the device to the car, but a majority of the court, which was five justices in the concurring opinions, recognized that you have a reasonable expectation of privacy in the sum of your movements. So that is, I mean, and Riley then, which came out after that, said that, you know, recognize that people carry their phones with them everywhere. So this isn't, you know, just simply being able to track where a car goes. This is being able to track a person and their phone. In your opening brief on page 20, you acknowledge that the state obtained defendant's cell phone records from his phone provider under the third party exception to the warrant requirement. But nonetheless, you argue that the requirement doesn't apply to sell site location under Carpenter. But since Carpenter hadn't been decided, wouldn't that exception have applied? Well, no, no, it wouldn't have applied. And counsel should have realized that it wouldn't have applied based on the fact that the courts in Jones and Riley, you know, stand for the basis that you have this heightened privacy expectation and location information, and particularly where Riley had cited the historical location information as being among the, you know, the heightened privacy concerns. But I lost my train of thought. I apologize. Could you repeat your question? No, it's just that there was an exception. You said that it doesn't apply to sell site location under Carpenter. But since Carpenter hadn't been decided, wouldn't that exception still be in place? Well, no. And this is talking about Smith and Miller. And in Miller, that involves bank records. And in Smith, that involves a pen register. But those are both prior to the digital age. And those also involve, like, voluntary conveyance, where there's knowledge and an affirmative action. So in Smith, they dialed the phone numbers. And for the bank records, you wrote the check, you filled out the deposit slip. And here, simply using a cell phone is not voluntarily conveying the sell site location information. And so that would have actually to find that it would be subject to the bank records would basically expand Smith and Miller. And so, you know, particularly given that the court had found or had stated in Riley that the phones hold the privacies of life. And, you know, as I mentioned before, the CSLI allows you to place an individual and his property, you know, at home, not just private locations. But, you know, private locations at specific points in time, you know, public locations and they're, they're very different than the, you know, the limited capabilities, which I believe it was Smith that noted that the pen register had limited capabilities. And those cases were decided in the 70s. Here, this isn't a limited capability. The police can basically find out everything about where a person was. And so, you know, or where their phone was. And so, and even Ransky testified that, you know, when it's when you need to know where a person is in their cell and their phone and their phone was that he's asked for assistance. So here, this is very different than what was included in the information that was allowed to be obtained under the third party doctrine and Miller. Thank you. I have no further questions. Any questions? Justice Cobbs? Yes, thank you. Assuming that we accept your argument that the motion to suppress should have been called, wouldn't it nonetheless be harmless error? Is there any other evidence in this case that would have been sufficient to convict? Well, this was a, it would not have been harmless. No, because it wasn't merely cumulative. It contributed to it contributed to the, to DeAndre's conviction. I mean, just if, if it didn't matter to this case, the state would not have relied on it as heavily as it did throughout its closing rebuttal argument. And so, no, the, the, the cell phone records were not, or the CSLI, it wouldn't have been harmless to admit that. Okay. Justice Kuczynski? Yes. You're ignoring the court order. There was a specific court order that gave them the authority to You're totally, you've totally ignored that. Why? Because it was actually to get into the phones. It wasn't to obtain anything from the phone companies. It, the... Physical location there, they didn't need a court order. They already had the phones. So they didn't need a court order to tell, to tell them they could say where they found the phones. They already found the phones. They knew where they found the phones. So I'm in the physical location of the devices to mean where the phones were used. Since when they, when the police found the phones, subsequent to a warrant and a search after a warrant, they found the phone. So they knew where they found them. They had them inventory. They had them identified. They knew this phone came from Shantay's apartment. This one came from the defendant's garage or whatever. They knew where they found them. So why would they need a court order after that to say where they found the phones? They wouldn't. The court order says in the physical location of the devices. And that's common terminology for the CSLA. And you've totally ignored that. You just ignored it. So why? The court, specifically in the motion, it, the, it only addressed about getting information from inside the phone, from the phone itself. The state acknowledged at the hearing that the phones were obtained from a search warrant of the Minkins residence and garage, but they said that they need to get into the phones and they were looking for, you know, a lot of information regarding, you know, several different things. And yes, one of the things that they wanted to retrieve from the phone itself was also the location information, the historical location information, but it wasn't the order of the hearing and the motion itself. Do not actually say that it was the CSLA from the carrier. If it was, then there would have been a subpoena and they never asked for a subpoena. They just asked for an order to be allowed to get into the phone itself. And even so, the cell phone location information was obtained prior to that order. And if it just takes simply filing a motion down the line where there's an, an illegal search, then the police would always illegally search things. And then the state would just file a motion later. So the, the motion doesn't really have any bearing on the issue before this court, because it was for the phones themselves and not actually the CSLI. The CSLI from the phone company was obtained prior to the state ever filing that motion. Okay. Thank you very much. Appreciate your arguments. And now we'll hear from your colleague. Thank you. Good morning, your honor's assistant state's attorney, Douglas Harbath on behalf of the people of the state of Illinois, may it please the court. This court should reject defendant's claim that his trial counsel were ineffective for failing to seek suppression of the cell site location information from his phone, which was acquired long before the Supreme court's 2018 decision in Carpenter counsel simply cannot be branded incompetent for failing to seek suppression where the motion prior to Carpenter, including the time, the CSLI from defendant's cell phone was acquired in 2012 federal reviewing courts had universally sanctioned the warrantless acquisition of CSLI. Given the state of the law at the time of the penance trial, there was no legitimate successful legal basis to seek suppression of CSLI. And any such motion would have been futile. The people wish to emphasize that defendant is not cited a single decision holding that the warrantless acquisition of CSLI before Carpenter warranted suppression. This is unsurprising because every federal appellate court to even address the issue held that the acquisition of CSLI did not even constitute a search or seizure subject to the fourth amendment's warrant requirements. And the Illinois appellate court, this, the first district has recognized the issue prior to Carpenter. All of these decisions which were cited in our brief show that prior to contemporaneous with, and even after the acquisition of the CSLI in this case, reviewing courts held that a search warrant was not required. Beyond these appellate decisions prior to Carpenter federal district courts in the seventh circuit, including the Northern district of Illinois had repeatedly ruled that the acquisition of CSLI was not a fourth amendment search and it did not require a warrant. It's against this backdrop that it becomes clear that the defendant cannot satisfy his burden of showing ineffective assistance of counsel to prevail on a claim for failure to file a motion to suppress the defendant must show one, the trial counsel's performance was deficient in that it was objectively unreasonable to forego the motion and to a reasonable probability that the trial court would have granted the motion. Defendant cannot satisfy either prong because the law at the time was that not only were there no appellate decisions supporting suppression, but appellate courts had universally held that the warrantless acquisition of CSLI was not subject to suppression on fourth amendment grounds, according to the third party doctrine. Third party doctrine is basis for all those prior decisions, including the federal appellate decisions. While Carpenter certainly requires a search warrant for CSLI acquired after June of 2018 when it was decided, it cannot be invoked retrospectively to brand trial counsel ineffective for failing to predict such a sweeping change in fourth amendment jurisprudence. To do this would be to engage in the very hindsight analysis of counsel's performance that Strickland prohibits and both the Illinois Supreme Court and this appellate court have expressly held that claims of ineffective assistance of counsel cannot be based on counsel's failure to predict or to anticipate future changes in the law, including new fourth amendment search and seizure decisions issued by the Supreme Court, the United States Supreme Court, and particularly the Riley decision. Defendant focuses on the absence of binding authority in Illinois that permitted the this is applying the wrong test. While the existence of binding authority is relevant to the good faith exception analysis, it is not the measure for a claim of ineffective assistance. That is based on the, and this is what the Supreme Court said in English, quote, the law prevailing at the time, it couldn't be more clear. That is the test for whether or not counsel is ineffective. So the operative question is not whether counsel could have filed a motion, as my opponent says, of course she could have filed a motion. The question is whether or not counsel would have been successful. And the question is not whether another attorney might have followed on either. The question in this appeal is whether counsel's strategic decision to forego motion to suppress was objectively unreasonable based on the state of the law at the time of the representation and whether number two, whether he was prejudiced by that strategic, based on the likelihood that he would have prevailed. And in this case, counsel made the eminently reasonable strategic decision to forego a motion to suppress that lacked any merit at the time and which no reasonable trial judge would have granted. Thus defendant cannot establish either prong of the test for ineffective assistance of counsel. In any event, even if such a motion had been filed and hypothetically had been successful, defendant cannot establish that the outcome of the trial would have been different where the direct and circumstantial in this case, the evidence in this case is truly overwhelming as discussed in our brief. For all those reasons, this court should affirm defendant's convictions for first-degree murder, an intentional homicide of an unborn child. I would ask you to follow up on just your last comment that the evidence was overwhelming. There's so much other evidence, even if this was the motion was granted. Talk to us about the failure of the defendant here in your judgment to meet the prejudice prong. Well, I think that I'm not, I will answer your question. I think the primary lack of prejudices and the defendant's failure to show that a trial court would have granted the motion in terms of the prejudice. I understand that. In terms of it would not have the outcome of the trial itself. The evidence in this case is overwhelming. Defendant was shown to be the last person that seen with the victim before she was abducted and murdered. Eyewitnesses placed them at the rest of the Applebee's restaurant together beforehand, which defendant had originally lied about that. The victims and the defendant's blood and DNA were recovered from the rocker panel on the defendant's car. Again, as I said, the defendant lied about the police, lied to the police about not being with the victim on that evening. The, I think significantly his efforts to enlist Josh Miller to provide a false alibi for him. And then defendants detailed admissions to Carl Hicks. And I understand that he's a jailhouse snitch and he had some baggage and all that was set forth to the, to the jury that heard that him with skepticism. But the fact remains that everything that he, that he testified to about what the defendant told him was corroborated by the forensic evidence as well as the video surveillance. And Carl Hicks testified that the defendant told him he lured the victim under the pretense of reuniting, which is what corroborated his own other evidence about meeting at the backseat. She's trying, you know, I don't need to go through every detail. This court's well over all the details, but it was fully corroborated in every spec. The video surveillance at the gas station near Shantae's apartment, which showing the, essentially showing the defendant's washing and vacuuming the car at two o'clock in the morning. And of course the defendant, excuse me, Rosemary's half naked body found in the forest preserve, just as Carl Hicks had said with no shoes, a few blocks from the defendant's house, the defendant's motive to eliminate her. And the jury was out an hour and 10 minutes. So I think, I think the evidence was overwhelming and I don't mean to diminish the importance of the CSLI. I want to make that abundantly clear. This was probative, highly probative evidence to be sure. But it was admissible. And I just, in response to your question, I would, even without that, I think the evidence was overwhelming, but I, but I do not mean to take away or diminish the importance of the evidence. That's all I have. Any other questions? Just one more. Mr. Harvath, counsel for defense indicated that all of the evidence that in fact was presented was available to be presented because it was pieced together based on the evidence from, based on the CSLI. Can you respond to that? I don't, I flatly disagree with that. I don't, the defendant was arrested before the CSLI, certainly was arrested before the evidence was obtained. They had the surveillance. And I don't know the exact timeline of when each piece of evidence was recovered, but I don't, I don't think they put the evidence in this case back together based on the CSLI that they obtained after or toward the end of the investigation. The CSLI in this case was indicted and charged. There was evidence from the interviews with Carl, with, you know, excuse me, with, with you know, the other evidence, other witnesses in this case before that was even obtained. So I don't, I don't, I disagree with that characterization, I guess. So would it be your position that the CSLI merely corroborated or served as additional corroborating evidence of facts or evidence that had already been obtained? Is that your position? It certainly did. And I understand that it's, it was cumulative too. And I understand there is a distinction between cumulative and corroborative. And again, I don't want to diminish the importance of this evidence, but it was, it did corroborate a mountain of other evidence. And as counsel indicated, it placed in incriminating locations during the relevant time period. But other evidence did that as well, including, and I didn't mention this, the, the, the ordinary phone records, the text messages, and the, of course, the evidence they got from the phone itself, from the physical phone itself, which is, which would not be subject to suppression under Carpenter as well. Okay. Thank you very much. We'll hear a brief rebuttal. Thank you. Thank you. There's a few things I'd like to address. First is that the, the Code of Criminal Procedure allows for the filing of a suppression motion up into the time of trial, and then under circumstances after the time of trial. So defense counsel had up into the time of trial file of suppression motion and the court precedent that I discussed earlier, what a support of that motion. And also counsel says that, you know, these federal cases existed. Well, those are not binding. It's also a stretch to say that counsel was reading all of these federal cases. But even if counsel was reading all of the federal cases, it's not true that all of the, all of the cases had found that the CSLI doesn't cover a warrant. In fact, the Third Circuit decision in Graham, which existed at the time of trial, the court had found that, you know, the, the views expressed in Riley and Joan concurrences support the conclusion that the government invades the reasonable expectation of technology, not general public use to discover movements of an individual. And even so, are not precluded from exercising their own judgment on federal constitutional questions. Counsel said that the CSLI was not obtained until after DeAndre had been indicted. That is inaccurate. Detective Lefkoe is on pages 131 to 134 of the report of proceedings. And then later on 162 to 164 and 167 to 169. I was on 424.11 that Lefkoe, Sergeant Lefkoe had obtained the defendant's phone number. And then he contacted Cricket for the subscriber info. And then the Cook County Sheriff was analyzing the CSLI. So the CSLI was obtained prior to the rest of the evidence. And then it was after the CSLI was obtained that the surveillance videos were obtained. With regard to the DNA, to say that it was a match is an overstatement. The passenger seat, there was a mixture of DNA, but you cannot, when there's a mixture of DNA, you cannot determine the biological source. And as far as the ROC group panel, the expert had contradicted himself. He, when testifying, he said that when asked about how statistically rare the profile is in the general population, he said approximately one in 150 black unrelated to the individuals can be excluded from the minor profile, but then testified that you would expect to find the minor profile one time in a group of 150 unrelated black people. And with regard to Joshua Miller, you know, and counsel arguing that DeAndre tried to obtain a false alibi. Well, that he didn't really try or to obtain a false alibi because the timeframe that Joshua Miller provided was from 840 to 1015 at night, but Rosemary's cell phone records show that she may have called at 1043 and that she was at the tower near Applebee's. Now, Joshua Miller claimed that DeAndre called him on the evening of the 25th. And so that is well after what, or I believe the evening of the 24th, I apologize. And they went to Applebee's on the 23rd. So if DeAndre was trying to establish an alibi as the state claims, then I mean, it is in fact, not an alibi because Joshua Miller apparently would have only been with him until 1015, but they were still at Applebee's at 1045. And then with regard to Hicks, the state just Hicks could have learned from DeAndre, you know, who had already been questioned by the police and, or already been questioned by the police and charged, like, you know, he would have known what would have happened because just by simply what are you charged with? Oh, I was charged with beating and strangling, you know, Rosemary and dumping her body in a forest preserve that provides a ton of information without actually him admitting that he did it. And so the CSLI though, was used by the state to try to bolster Hicks' testimony because they knew that he, he was not a credible witness. And then when that happened, the state also provided that the results of the independent basis, because it's like, oh, well Hicks isn't the linchpin. So then it turns to the CSLI. And so the evidence in this case is not overwhelming, and this isn't a sufficiency argument where we have to show that DeAndre would be acquitted. We only have to show that there's a reasonable probability that the outcome would have been different. And as this court stated in McCarter, a reasonable probability may exist where the chance of acquittal is significantly less than 50%. We would ask this court to reverse and remand. Well, do you have any other questions? I'm sorry. No other questions from us. Okay. Thank you very much for your briefs and your arguments, full of intellectual honesty and a lot of passion. As always, we appreciate it. We are adjourned and you'll hear from us in the next few weeks. Thank you very much.